1  KAREN P. HEWITT
   United States Attorney
2  DAVID L. KATZ
   Assistant United States Attorney
3  California State Bar No. 141295
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-5226 / Fax: (619) 235-2757
   Email:  David.Katz@usdoj.gov

   Attorneys for Plaintiff
   United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR3315-BEN |
|---|---|---|
| Plaintiff, | ) | DATE: February 11, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | |
| | ) | **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* TO:** |
| ALEJANDRO SAUCEDO-VIRGEN, | ) | |
| Defendant. | ) | |
| | ) | **(1) EXCLUDE EXPERT TESTIMONY;** |
| | ) | **(2) EXCLUDE EVIDENCE OF NERVOUS DEMEANOR;** |
| | ) | **(3) PRECLUDE EVIDENCE OF POVERTY;** |
| | ) | **(4) PRECLUDE 404(b) EVIDENCE;** |
| | ) | **(5) ALLOW EVIDENCE OF THIRD-PARTY CULPABILITY;** |
| | ) | **(6) ALLOW ATTORNEY-CONDUCTED VOIR DIRE;** |
| | ) | **(7) PROPOSED ATTORNEY VOIR DIRE.** |
| | ) | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES AND GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY** |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and DAVID L. KATZ, Assistant United States Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions *in limine* and Motion for Reciprocal Discovery.  This Response and Opposition and Motion for Reciprocal Discovery

are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF FACTS**

**A.     THE INSTANT OFFENSE**

    1.     Defendant's Entry to the U.S.

On November 11, 2007, at approximately 9:00 a.m., Defendant entered the United States from Mexico through the Otay Mesa Port of Entry (POE) as the driver and sole visible occupant of a white 1997 Plymouth Voyager bearing Baja, California. Mexico license plate #BEB9258. U.S. Customs & Border Protection Officer (CBPO) Tenwolde was then assigned as primary inspector for lane 11, the one through which Defendant drove. Defendant produced a valid border crosser visa (DSP-150) as his entry document and proof of identification.

CBPO Tenwolde received a negative customs declaration from Defendant Saucedo. Officer Tenwolde noticed that Defendant was avoiding eye contact and the vehicle had after-market running boards installed. Tenwolde requested that Defendant give him the vehicle keys and proceeded to make a cursory visual inspection of the vehicle. When looking underneath the vehicle frame, Officer Tenwolde noticed a non-factory compartment mounted underneath the vehicle. When looking at a metal plate near the center of the undercarriage, the officer noticed a pair of athletic shoes inside the compartment. He then called for a canine enforcement officer to have the vehicle screened by a trained human detector dog. After the detector dog, "Aries CF-81," was brought over, it alerted on the vehicle. Officer Tenwolde called for assistance and the vehicle and Defendant were escorted to secondary.

Mr. Saucedo was escorted to the secondary office by CBP Supervisory Officer Robles. While being escorted to the office, volunteered to Officer Robles that he was just going to Wal-Mart to buy an "X-Box." Robles asked him who owned the vehicle. Saucedo told the officer that he had borrowed it to go buy the X-Box, as his own vehicle was out of service. When patted down, Saucedo was found to have $526 USD on his person.

//

//

### 2. Discovery of three illegal aliens in the compartment underneath the vehicle

In the course of conducting inspecting the vehicle, CBP officers were able to see human hair inside of the compartment mounted below the undercarriage. Officers then removed the interior seats in an effort to access the compartment, but found no access from inside the vehicle. They also attempted to communicate with the people inside of the compartment, but received no response. CBP officers then utilized the hydraulic lift to raise the vehicle, in order to better access the undercarriage, and forced open the compartment by bending a metal panel. That created enough space for the officers to extract what was revealed to be three (3) females concealed inside of the metal box.

### 3. The Illegal Aliens / Material Witnesses

Photos were taken of the compartment and the three occupants, who admitted to the officers that they were all citizens and nationals of Mexico with no right to enter the United States. The three illegal aliens, identified as Imelda Baez-Reyes, Blanca Padilla-Gomez and Maria Del Rocio Juarez-De Dios, were interviewed and retained as material witnesses. The three women were also taken to Scripps Memorial Hospital in Chula Vista, as medical attention was needed.

In recorded statements, each of the material witnesses answered questions from CBP Officer Curtis. Ms. Baez and Ms. Juarez gave separate statements that were very similar. Each woman stated that she had arrived in Tijuana the previous night after flying there from Colima. She met a man in downtown Tijuana who offered to cross her into the United States for $3,000. When she agreed, she was taken to an apartment building and told that she would be picked up the following morning. The next day, the same man took her to the vehicle, which was, at the time, being held on a tow truck. She was in that compartment, underneath of the van, for approximately 1-1/2 hours, during which time she was very hot, smelled gasoline and bumped her head on the metal compartment every time the van went over a bump. Neither woman was able to recognize or implicate Defendant Saucedo.

Material witness Padilla said that she is married to a U.S. citizen, but had no legal right or permission to re-enter the United States after leaving. On the day before she was found in the compartment by CBP officers, she made arrangements with an unknown man and woman in Tijuana to be smuggled into the U.S. for $3,500. On the day she was to be smuggled, she was picked up by a man and placed inside the compartment. It was very hot inside the compartment and her head was very close

1  to the motor. She also smelled gas and got bumped around inside of the compartment whenever the van
2  went over a rough spot on the road. She was unable to recognize or implicate Mr. Saucedo.

3  **B.     DEFENDANT ADVISED OF HIS RIGHTS & DENIES KNOWLEDGE**

4  At approximately 11:58 a.m., that same day, Defendant Saucedo was placed under arrest and
5  advised of his Miranda rights in Spanish by CBP Enforcement Officer Jorge Rosario, and witnessed by
6  CBP Enforcement Officer Cerda. Mr. Saucedo acknowledged his understanding of his rights, both
7  verbally and in writing, and agreed to answer questions without an attorney present. Defendant said that
8  he was in good health and had drank a six-pack of beer the previous night at about 10 p.m. He denied
9  any current use of narcotics or illegal drugs. He did not appear to the two officers to be under the
10 influence of any alcohol or drugs.

11 Saucedo said that he is a citizen of Mexico, but has had a border crossing card for about six (6)
12 years. He has lived in a house with his wife and children for 27 years and works for a company as a
13 carpenter. He crosses the border into the U.S. on a regular basis. He owns two vehicles, but both
14 neither was functional on that date. The $526 found on his person at the time of his arrest was there for
15 the purpose of buying an "X-box" video game as a gift for his brother - even though he had no money
16 with which to fix either of his vehicles so that they could be driven. He said that he could always
17 borrow money from his brother to fix the vehicles.

18 Defendant said that the previous night he had been socializing in his neighborhood with an
19 acquaintance he knows as "Rudy." He has known Rudy for about ten (10 ) years, but doesn't know
20 Rudy's last name. Defendant told Rudy that both of his vehicles were not working and he needed to
21 travel to the U.S. to buy an "X-box " video game at Wal-Mart in the U.S. Rudy, Defendant said, offered
22 to lend him his vehicle so that he could travel to the U.S. to buy the game. In return, Rudy had
23 instructed him, Defendant, as soon as he crossed the border, was to drive and meet with a woman who
24 was the wife of the owner of the vehicle he would be driving. Rudy told him to drive to a Denny's
25 restaurant on E Street in Chula Vista. Rudy had also instructed him to pick up a small refrigerator from
26 the woman. Once he had done those two things, Rudy told him, he could then go buy his video game
27 system using that vehicle. Defendant agreed.

28 //

1  At about 6:15 the following morning, Defendant told the agents, Rudy called to tell him that the
2 vehicle would be delivered to his house at about 7 a.m. True to his word, the vehicle arrived at his home
3 at 7 a.m. Because he didn't trust Rudy, Defendant explained, he personally inspected the vehicle before
4 driving it to the U.S. He also . He tapped on the tires, pushed on the seat cushions, visually and
5 physically inspected the interior of the van and found no indication of contraband being present. He
6 added, however, that he had not looked underneath the van. He noticed that they gas gauge on the dash
7 was not working, but called Rudy twice before reaching toe POE to confirm that the van was clean of
8 all contraband. During both calls, Defendant maintained, Rudy told him that there was no contraband
9 or people of any kind inside of the vehicle. Having been assured by Rudy, he continued driving to the
10 POE, where he was subsequently arrested.

11  Defendant denied any knowledge of any people being concealed anywhere in the van he was
12 driving and is fully aware that it is illegal to smuggle undocumented aliens into the U.S.

13 **C.     THE VEHICLE**

14  The registered owner of the Plymouth Voyager van driven into the Port of Entry by Defendant
15 Saucedo on the date of this offense is Concepcion Victorino, 14134 Via Alisal, in San Diego, California.
16 According to TECS records, the vehicle crossed into the U.S. on two prior occasions: July 22, 2007 and
17 October 4, 2007.

18 **D.     DEFENDANT'S CRIMINAL RECORD**

19  At this time, the Government is not aware of any criminal convictions or arrests of Mr. Saucedo.

20 **III**

21 **POINTS AND AUTHORITIES**

22 **A.     EXCLUDE EXPERT TESTIMONY CONCERNING "BLIND MULES" AND
23        HIERARCHY OF DRUG SMUGGLING ORGANIZATIONS**

24  First, this is not a drug smuggling case. Defendant is charged with alien smuggling, a
25 substantially different offense. Nevertheless, the Government does not intend to introduce expert
26 testimony at trial. This motion is moot.

27 //
28 //

**B.     EVIDENCE OF NERVOUSNESS IS PROPER AND ADMISSIBLE**

The primary agent in this case made observations in his interactions with Defendant. This evidence should be admitted because it is relevant and not overly prejudicial.

1.     <u>Demeanor Evidence is Admissible to Circumstantially Show Knowledge</u>

Evidence regarding Defendant's demeanor and physical appearance is admissible as circumstantial evidence helpful to the jury's determination of whether the defendant knew drugs were concealed in the car. See Fed. R. Evid. 701; <u>United States v. Romero-Avila</u>, 210 F.3d 1017, 1023 (9th Cir. 2000) (identifying defendant's nervousness at the border as part of the "strong independent evidence of defendant's guilt"); <u>United States v. Hursh</u>, 217 F3d. 761, 767-68 (9th Cir. 2000) (nervousness during border questioning at primary inspection and later nervousness while car was being inspected at secondary was additional evidence of knowledge); <u>United States v. Klimavicius-Viloria</u>, 144 F. 3d 1249, 1263-1265 (9th Cir. 1998) (the crew's demeanor, such as becoming less cooperative when the Coast Guard decided to search a tank where bales of cocaine were later found, was relevant to show knowing participation); <u>United States v. Lui</u>, 941 F.2d 844, 848, 848 n.2 (9th Cir. 1991) (defendant's actions both before and after discovery of drugs, such as acting disinterested and not helping in the search, and, when the inspector found the drugs, stepping away without attempting to see to what the inspector was referring, supported a finding that the defendant was guilty); <u>United States v. Barbosa</u>, 906 F.2d 1366, 1368 (9th Cir. 1990) (defendant's apparent nervousness and anxiety during inspection was valid circumstantial evidence of knowledge of concealed narcotics).

Thus, courts of this Circuit have clearly held that signs of nervousness constitute appropriate circumstantial evidence that a defendant knows there is contraband in his vehicle or possessions. The Ninth Circuit has recognized that evidence of nervousness can suggest fear of getting caught with contraband the person knows he is carrying. See  <u>United States v. Fuentes-Caraiga</u>, 209 F.3d 1140, 1142 (9th Cir. 2000).

Defendant may argue that because nervousness is not conclusive evidence of knowledge, it should not be admitted. It is sufficient that nervousness can be properly used as relevant circumstantial evidence of knowledge, as Ninth Circuit has repeatedly held. See Fed. R. Evid. 401 (defining evidence

as evidence "having any tendency to make the existence of any fact . . . more probable or less probable . . . .").

Furthermore, that the testimony of nervousness will come from law enforcement officers does not amount to prejudice that "substantially outweigh[s]" the probative value. See Fed. R. Evid. 403. Defendant takes the position that this evidence is prejudicial because jurors give undue weight to law enforcement witnesses. Under this view, no law enforcement officers would ever be able to testify about anything, since their identity would make all their testimony prejudicial. This is certainly not the case. Defendant's motion should be denied.

2.  Nervousness Testimony Does Not Violate Rules 701 and 704(b)

A lay witness may state his opinion that a person appeared nervous. See United States v. Mastberg, 503 F.2d 465, 470 (9th Cir. 1974). Rule 701 allows a lay witness to testify to opinions or inferences (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on specialized knowledge. Here, an experienced CBP officer will testify as to his observations of Defendant that led him to conclude that he was nervous. Because the officer, as a lay witness, may state his opinion that Defendant appeared nervous, and because that opinion is based on his observations and interactions with Defendant, this testimony is proper.

**C.   EVIDENCE OF POVERTY**

The Government does not intend to introduce evidence of Defendant's poverty. Therefore, this motion is moot.

**D.   EVIDENCE OF PRIOR BAD ACTS OR CRIMES BY DEFENDANT**

At this time, the Government is not aware of any prior criminal convictions of Defendant, nor any prior bad acts that would be admissible under Rule 404(b). If the Government becomes aware of such evidence, the Government will notify Defendant and the Court. Therefore, this motion is moot.

**E.   EVIDENCE OF THIRD-PARTY CULPABILITY**

Defendant's reference to evidence of third-party culpability is vague and non-specific has made. It is difficult to respond to such a motion to admit evidence without knowing what evidence Defendant has concerning "Rudy," the alleged individual in Mexico who arranged for the use of the vehicle in

which the illegal aliens were transported into the United States by Defendant. Likewise, it would be improper for defense counsel to make reference to an individual named Rudy in his opening statement without a proffer as to what the evidence - including anticipated testimony by Defendant himself - he will introduce concerning the existence of "Rudy."

Despite the failure to provide any specific information about whatever evidence he has concerning "Rudy," Defendant's motion makes reference to "documentation of third-party culpability." Before responding to such "documentation," the Government must know what documentation exists. Given that the Government is unaware of "Rudy's" last name, date of birth, address or other identifying information, any attempt to introduce some evidence of other similar bad acts of "Rudy," or "Rudy's" reputation in the community in Mexicali, where he allegedly resides, must be preceded by specific evidence of Rudy's identity. Otherwise, such evidence should be precluded, under Rule 403, because its prejudicial value would clearly outweigh any speculative evidentiary value and there would be no way for the Government to verify and counter such evidence.

Unless the Court makes a pre-trial ruling allowing the admissibility of specific information regarding the prior registered owner or the vehicle history, defense counsel should be prohibited from making any reference to that information in his opening statement. Reference to third-party culpability evidence that is later excluded during trial will likely cause irreparable harm to the Government's case by planting a seed in the jurors minds of third-party culpability where Defendant can not substantiate it with admissible evidence. At best, the jurors will be confused. Defense counsel will have an opportunity to reference all admissible evidence in his closing argument.

### F.    GOVERNMENT HAS NO OBJECTION TO APPROPRIATE ATTORNEY-CONDUCTED *VOIR DIRE*

The Government has no objection to limited attorney-conducted *voir dire*. However, the Government opposes any such voir dire that (1) is an attempt to present and argue its case to the prospective jurors in advance of trial, and (2) is not relevant to whether jurors are able to consider the evidence in the case and arrive at a verdict based solely on the evidence and law received during the trial. In that regard, the Government **objects** to the following attorney-conducted voir dire questions proposed by Defendant (listed by Defendant's numbering):

1. (irrelevant);

4. (Redundant - covered by questions 2 & 3);

5. (Irrelevant and improper)

6. (Redundant - covered by questions 2 & 3)

7. (Incorrect, as case involves criminal law as it applies to illegal immigration; and redundant - covered by questions 2 & 3);

8. (Redundant - covered by questions 2 & 3);

9. (Redundant - covered by questions 2 & 3);

12. (Improper & irrelevant);

13. (Improper & irrelevant);

14. (Redundant - covered by questions 2 & 3);

16. (No evidence of profiling in this case - question is improper & irrelevant);

17 through 20. (irrelevant);

22. (Question as to assignment of blame to illegal immigration improper & irrelevant)

24 through 36. (Irrelevant & improper);

38 through 43. (Irrelevant & improper);

45. (Irrelevant & improper);

46. (Irrelevant - no evidence of "official restraint," as this is not 1326 case).

## IV

### GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY SHOULD BE GRANTED

The United States hereby requests reciprocal discovery from the Defendant pursuant to Federal Rules of Criminal Procedure 16(b) and 26.2. Rule 16(b)(2) requires the Defendant to disclose to the United States all exhibits and documents which Defendant 1 "intends to introduce as evidence in chief at the trial" and a written summary of the names, anticipated testimony, and bases for opinions of experts that the Defendant intends to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

//

**V**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Defendant's motions *in limine* be denied and that the United States' motion for reciprocal discovery be granted.

DATED: February 8, 2008.

                    Respectfully submitted,

                    KAREN P. HEWITT
                    United States Attorney

                    s/*David L. Katz*
                    DAVID L. KATZ
                    Assistant United States Attorney
                    Attorneys for Plaintiff
                    United States of America
                    Email: David.Katz@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR3315-BEN |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| ALEJANDRO SAUCEDO-VIRGEN, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, DAVID L. KATZ, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* TO: (1) EXCLUDE EXPERT TESTIMONY; (2) EXCLUDE EVIDENCE OF NERVOUS DEMEANOR; (3) PRECLUDE EVIDENCE OF POVERTY; (4) PRECLUDE 404(b) EVIDENCE; (5) ALLOW EVIDENCE OF THIRD-PARTY CULPABILITY; (6) ALLOW ATTORNEY-CONDUCTED VOIR DIRE; (7) PROPOSED ATTORNEY VOIR DIRE. TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES AND GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Paul W. Blake, Esq.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2008.

s/*David L. Katz*
DAVID L. KATZ
Assistant United States Attorney